Good afternoon, your honors. I'm glad you said good afternoon. I would have said good morning, I'm afraid. I would appreciate it if you could speak into the microphone. Yes, your honor. Sorry, we were just talking about this earlier. Good afternoon. Michael Drake for Joe Stanley, the appellant here. I'd like to reserve at least three minutes for rebuttal. I'll watch the time. You bet. I'm more anxious than anything to get to any questions that you would have. There's so much we could talk about, but I thought I might begin with some points on the merits. The merits question here in this double jeopardy case is whether Joe Stanley's attorney, Mike Pence, implied consent to the mistrial. What's your strongest argument that this is a 2-2-5-4-1 rather than a 2-2-5-4? I think the strongest argument, and I might have added it to the briefing, is that the case for an equitable exception, which I do think it would have to be an equitable exception to the statutory scheme, is that this actually promotes the statutory scheme as opposed to equitable tolling, which is kind of a reasonable assumption about pretrial. As a pretrial detainee, 2241 was the proper vehicle. There's no dispute about that, and there's also no dispute that had he not been erroneously denied a stay in the case, his claim would have been ultimately adjudicated, finally adjudicated. Do you think there's a waiver slash law of the case issue here as to that? I mean, that is, we were here before, the government did not at that point argue it was a 2254, although the conviction had already occurred by the time of that argument. I don't think that issue was decided by the court's decision. It wasn't decided. Well, there's a footnote that says it's a 2241, and it was certainly discussed at the argument, and the, and I've looked back at the argument, and the government agreed that they hadn't raised it at all, and they were proceeding on the, and they also affirmatively argued that there was still a Younger v. Harris issue in the case, which is not exactly the 2241, but I must say that somebody who sat there and listened and decided what we thought was a 2241, it's rather strange that you go back to the district court, and all of a sudden it's not a 2241. I do agree that it is strange, and I'm, I think the court could rest its hat on the law of the case. How could we do that given what the language of 2254 is? I mean, we're dealing with a statute. You're not arguing that 2254 by its terms doesn't cover a case like this, right? I'm not arguing that, yeah. No, I, I mean, I think if, if you apply law of the case, that's one way to go. If, if you treat law of the case as this was a 2241 when it was here, the state had an opportunity to argue it, but I, I think, in my opinion, for what it's worth, I think that the equitable exception is, is the stronger, is the any case that has recognized the type of equitable exception that you're arguing now for saying, notwithstanding the language of 2254, equitably we're going to make this 2241? No, Your Honor. I mean, I, we're, we're relying on the general equitable principles invoked in Holland, right? Those were all general equitable principles. It wasn't just about tolling. It was about all types of different. There are some other circuits that have gone the other way, right? There are, it would, I think, create a circuit split. Oh, yes. But I, but I think your brief is, is quite candid that you're relying on Holland and, and it's an equitable argument at best. Could I, could I get you to shift gears? Even if we went with 2241, what's your strongest argument under 2241 that the implied consent ruling was erroneous? Well, I think, well, on, on de novo review, I just think that there's just, there are no, there are no circumstances. It's hard to pinpoint a circumstance that matters, but I guess I would maybe focus on that first statement by Pence that maybe the state court hangs its, hung its hat on, which is the statement that Pence made during the colloquy about Juror 6 and his pink eye problem and the scheduling problem that came of it. Pence, in that moment, was simply responding to Judge Bower's specific points about the problem that Juror 6 posed, about Judge Bower's, mentioned that three times. He said, you know, he brought counsel's attention back to this. Look, I don't have a, I don't have a decision from you about what we're going to do about this. And in that moment, Pence is responding directly to that, saying, hey, look, my only problem with that is that I need to get my expert here scheduled. That in no way endorses or has even anything to do with the hypothetical, you know, conditional procedure that the judge proposed or announced. But it says, again, if somebody, you're, you're on the point where it says if somebody raises their hand, we are done, right? Uh-huh. And there is nothing where counsel said, I don't know what you mean, Judge. I don't know what you're talking about. I don't know what, I don't know what done means. Counsel says, the only problem I have is making sure my expert gets to testify. Right. Well, I think, so there's two points there. One is what Judge Bower's is saying there is conditioned on there being down to no alternates, which there's no dispute. They were not down to no alternates. They had at least one, and I think arguably two. And then one, if we assume the person wasn't actually dismissed. Number four. Two, there are two, if they weren't dismissed. There's juror four and juror six. Or is the, juror six is the pink-eyed guy. Right. Juror four is the broken ankle. Broken ankle. Broken ankle person who's fiancé. Fiancé, broken ankle, yes. Had he, you know, I think he would have had a strong, a strong request for, to be excused if it had been his ankle, but that it was his fiancé at home, I don't think that was a very strong reason. And in any case, it just wasn't resolved. So I think there are two, two jurors there at that point. And at least, at least one, you know, not much turns on that. And it was, you know, the procedure was conditioned on there being down to no alternates. So, you know, there was no, there was no, there was no obligation. Well, there's no point in Pence's trying to clarify at that point what he meant, and perhaps we can assume that he knew what Judge Bowers meant. Why wasn't there? This, your brief wraps around a couple of ways, and I appreciate you're not raising a D1 argument anymore. Right. Just a D2 argument. Right. But you, I think, kind of bake in the D1. And that is to say that even under the federal standard where we look at all the circumstances, your view, I think, is that we need to put this, view this through the lens of essentially the defense counsel was operating under that framework. Isn't that right? Well, Curry is state law. And I think, right. Well, I don't think it's a problem, Your Honor. I mean, we are, we don't have a clearly established federal standard. Right. So isn't your argument under D2, forgive me for interrupting, but I want you to correct me if I've got this wrong. My understanding is your argument is that because we're looking just at D2, the finding of fact, and we're looking under the federal standard, which is all the circumstances that your position is that we need to consider the defense counsel in a courtroom in California was assuming he was pursuant to Curry, where silence was not going to be enough. Is that an unfair paraphrase? No, I think that's correct. Completely correct. Well, if that's the case, then what happens when Stanley one comes out, right? And the California court of appeals says that this was that this conduct in this case, considering the transcript you were discussing with Judge Bennett is not mere silence, that there was more than that evidence in this record. What do we do about that? The fact, I think that you find it's just based on unreasonable factual determinations. There was no other conduct. There was no conduct. He merely stated in response to Judge Bower's statements about juror six that he had his only problem in scheduling around juror six was he needed to schedule his expert. So we have other cases where we talk about conduct where the, Smith is a good example, right? Where there's the, I think that's the case where there are two different defense counsel and one was making motions and vis-a-vis mistrial urging mistrial and the other stood by silently. And the result, the outcome in that case was it wasn't reasonable for that, for that lawyer to remain silent, right? Right. But I don't think Smith, that's a U.S. case, right? Right. Yeah. So he's not, those lawyers, one, that was a separate situation where there had been affirmative conduct by a defendant that his, the other attorney should have known, you know, usually leads to a mistrial. And two, they weren't operating under the professional rules that governed Pence's own conduct. So many of these cases evolved a very abrupt outburst. You know, a witness blurts something out and then a judge throws up his or her hands and declares a mistrial and doesn't give an opportunity to object and so forth. And under those circumstances, those cases are typically manifest injustice cases. We're looking, or manifest necessity cases, right? But we're talking about implied consent. Right. And it seems to me that that's a tougher ballgame for you because we're looking at all of the circumstances and this isn't an abrupt issue at all. This is a, these jurors were showing up. This is why we don't typically swear in juries on Friday afternoon, I would suggest, Monday morning. And, but it took some time. I mean, that's very palpable from the, from the record. So is it, is it really your argument that the lawyer never had an opportunity to object? Yes, Your Honor, because it was sudden because what was sudden was Judge Bauer's departure from the policy that he, the procedure that he'd announced, right? He had conditioned it on there being no, down to no alternates. Instead, he comes into the courtroom and dives right into doing what he said he was going to do if they were down to no alternates. And what he said he was going to do was, I mean, it was not only not manifest necessity, but he essentially, what he said he was going to do was leave it up to the jury to just opt out. Well, that's, yes, that's right. And so what the, your, what Stanley would have had a consent to was that rather unusual procedure. Right. And he, so, so the real question to me, I mean, I think you're right that it was, he departed from what he said he was going to do, but he did, he was clear when he spoke to the jury as to what he was going to do at that juncture, even though there was at least one and maybe two alternate jurors. So the question really seems to come down to whether one can infer consent from Stanley's attorney, not objecting at that point, at the point that he said to the jury, now I'm going to do this and you just raise your hand and you're out of here. And that's what he did because you have this juror number six who says I had a heart attack and nobody asked him, you know, when did you have the heart attack or anything? And there's no way that would have sufficed as a dismissal for cause in ordinary sense. Right. So the question is to me, from the point that the judge said this and while he was carrying it out, was there some obligation? Well, can you infer from the fact that he didn't say anything then that he consented to Well, there was no obligation because of the governing California law and his professional obligations under state law and under Strickland. I mean, there you have a problem because the state court said that there was, even if it was inconsistent as it appeared to be with the earlier case law. So, I mean, ultimately as a 2254, you have to explain why the state court determination was unreasonable either as fact or law. Because the state court's determination that he had an affirmative obligation at that point was based on the unreasonable determination that he had agreed to this procedure in the first place and by ignoring the conditions that Judge Bowers had placed in it. We'll give you more time. Don't worry about that. But I have the same question. So could you finish up with Judge Burson? I want to make sure we get her questions answered. Right. And so, I mean, so I think that the state's, state court's decision that there was an affirmative obligation is based on these initial, you know, they're sort of just, they flow from these initial unreasonably, unreasonable factual determinations that there was an agreement that it had, that Pence's statement had anything to do with Or even that the judge had actually forecast what he was going to do. Possibly. I mean, I think, I think the court can assume that he intended to do. But the question, the question is whether that generated, you know, under the operative professional responsibilities that counsel had an affirmative obligation. Right there, though. But I think this is the problem I'm having with your argument. I think you're arguing that the trial court was very clear about what he was going to do and that he deviated from that. So if he was very clear about what he was going to do and he object. Well, because. Okay, that wasn't my understanding. Suppose, suppose that, suppose that Judge Bowers had said, had at that point in time, during, without any prelude, right, had just said, I'm going to, you know, I'm going to declare a mistrial. Do you have any objections? And Pence could have remained silent under, you know, under California law. We're not operating under California law. That's your problem. Right. But the California law are the circumstance, under the totality of circumstances, the law that Pence was operating under, right, the law that informed him what he had to do and what he had not to do to preserve a double jeopardy claim and not to. Well, what do you understand, as far as I can tell, in terms of Supreme Court law, there is consent. The only cases, is there any case in the Supreme Court where consent was implied without a motion, an affirmative motion by the defendant of some kind? There, there, I can't remember which case it is. There's, there's a case, I don't think it's an implied consent case. It's where, you know, counsel made misstatements that the court found were prejudicial and called a mistrial. I can't remember what case that is, but that's, I don't think that's a consent case. I can't think of any motion for a mistrial or a motion for a severed trial or some affirmative something. Right, that might well be. And when they're talking about consent, they're talking about actual. That, that might well be. Affirmative behavior. Right, some kind of affirmative conduct. So, our, our case law seems to admit of something vaguer, but even under our case law, is there any case that's like this in terms of the, the most one can say is that he didn't affirmatively object without being asked for an objection? I can't think of any, Your Honor. Although, as the district court said, I think at page 63 of the report and recommendation, numerous circuit courts, including the Ninth Circuit, have held that silence and or a failure to object can establish that there was implied consent so long as there was an opportunity to object. I would quarrel with it about the Ninth, this circuit's law. I, I agree that that is the law in some other circuits. In this circuit, as I've argued in, I think, more, in more detail in the, in the reply brief in response to some of the cases that they cite, right, these are, this is confusing sufficient and necessary conditions. If you object, obviously there's no, right, there's no, there's no. And you agree that there's no Supreme Court case. I think you just agreed that there's no Supreme Court case that says you, that consent doesn't include implied consent. I, I, yes, I've not found a case that says that. What's the strongest Ninth Circuit authority that cuts your way? You know, honestly, probably a case that I didn't cite, but if I, if I'm limited to the cases we cited, the Weston versus Kern. I'll take them all. Is there something else? Guyden. Yeah. G-A-Y-D-A-N. Let me see. G-A-Y-D-A-N. But that's a very abrupt case. That's a case where there was no opportunity to object and there's an abrupt. Right. There's no case, certainly there's no case controlling the facts here. Okay. So you've got Weston and Guyden. Guyden, yeah. I think those are probably the best. All right. I have an unrelated question and you're over time, but I'll try to do this quickly. I want to make sure that I'm understanding the record correctly because it's a little, well, I just want to make sure. Are there two declarations from Mr. Pence? I'm only aware of one declaration from Mr. Pence. There's only one registered in the excerpts of record. The prosecutor's declaration references two of those. There is another one in the district court, but if you're just relying on the one that you put on appeal, so we're not missing anything, that would be. So in that case, am I right that there's no place where Mr. Pence, well, actually in either of the declarations, where Mr. Pence asserted that he was relying on the Curry standard when he did not object? That's correct. We don't have that. Right. Okay. And I could comment on that if you'd like. It kind of makes sure that I understand the land. If I'm missing something, that is correct. You're not missing. It wasn't tricky question. Okay. Okay. I appreciate that. Judge Bennett, do you have more? No. Well, you can plan accordingly. We'll give you a couple more minutes. You bet. Counsel? Good afternoon, and may it please the Court, Christopher Sanchez, Deputy Attorney General for Respondents. Again, I'm asking you to try to speak up. Thank you. Thank you, Your Honor. I'll start by discussing the standard of review in this case, since the Court started with the 2254 case. Did you argue the case last time? I did not, Your Honor. No. All right. Have you read the transcript? I have not had a chance to read that transcript. Have you listened to the argument? I haven't, no, Your Honor. Well, the question did come up of whether, I guess your colleague argued that it was now a 2254 case, and we said, oh, but you haven't argued that. And he said, that's true. I haven't argued that, which he hadn't. And there is in the amendment, a footnote that says this is a 2241 because it was filed pre-trial. So here we are back again, and it created at least a major mess because we decided the case that understood theory by all the parties and us that it was a 2241 at that point. So why isn't it a 2241 now? Why are we going back over that? My understanding is that when this Court first touched this case, it wasn't clear if the defendant had yet been retried and convicted. He had been retried and he had been convicted. Yes. He had been retried and convicted when we heard the case. Okay. It seems that for some that this case was being handled as a pre-custody case. That's true. However... And it was your assumption as well. I mean, yours meaning the government's. And the question is, why do you get to redo it now? After we went through a whole proceeding, we decided an issue on that premise. It was agreed at the argument and it was true that it was never argued that it was 2254. If it is a 2254 now, it was 2254 then, and yet nobody told us that. I understand, Your Honor. I would say that the argument would be that once it was understood that the defendant was put into custody, the government... It wasn't the priest that he was convicted. I mean, everybody knew he was convicted. That was not the issue. The only thing I can point to then, Your Honor, is that this Court has also recognized that this case has been transformed to a 2254. This Court later gave an order when it got remanded to the District Court a second time and it did recognize that this case was being analyzed under 2254. It did? When? The District Court notes that one of the reasons why it analyzed this case under 2254 is because a remand order given by the Ninth Circuit recognized that this case was a 2254 case. Oh, no, it did not. It absolutely did not. Yeah, I don't think you're familiar with the record. Anyway, go ahead with the rest of your argument. Okay. I mean, the remand order was in the Mem Dispo and the Mem Dispo has a footnote saying it was a 2241. It did not say it was a 2254. I understand, Your Honor. The order that I'm referring to specifically is that after the second round of appeal in the State Court and when it got to the District Court a second time after that, a petitioner filed a pro se writ asking this Court to order the District Court to have an evidentiary hearing. That's true. The Court in response to that pro se motion told the District Court to hold that hearing and in that order it stated that this case was a 2254 case. I don't have that. I think that order addressed the parties to, directed that that should be considered. That's correct, Your Honor. And so one of the things that was then considered in the evidentiary hearing was whether to hold this case as a 2241 or a 2254. And so one of the reasons why the government believes that we can move forward with this case as a 2254 is because this Court has recognized this case to be such. Well, wait a minute. Are we, I'm referring, are you referring to the August 12th, 2021 order? I believe so, yes, Your Honor. By our panel, this three-judge panel, is that in their briefs the parties should address whether 2254D is the appropriate standard of I think it was a question, counsel, not a recognition. Okay, I understand, Your Honor. But I'm not trying to give you a hard time or ruin your day, but I am trying to make sure that you're referring to the same order and there's nothing else in the record that we're missing? I apologize, Your Honor. I wish I had the pages here in front of me. The only thing I can say is that I would refer this Court to the District Court's report and recommendation. In there, one of the reasons the District Court says that 2254 applies in this case is because they believe this Court recognized this case to be a 2254, and I believe they cite a specific order given by this Court. Well, that, I think, you're referring to the Magistrate Judge Standish, and what she did there was recognize that the District Court had converted, had previously made the ruling, and then we issued our ruling, as I said, in August of 2021 directing the parties to address it. But I do not think that our Court has gone quite as far as you're suggesting. At least if it has, I don't see it. I apologize, Your Honor, then. But I will say, just speaking about the standard of review, one thing I'd like to emphasize to this Court is that Petitioner makes this argument about equity, and using their analogy, I would say that here, due diligence hasn't been shown to require equity to apply to have this case be a 2241. Specifically, what I mean is that Petitioner argues that because the District Court erred in not granting a stay in this case, Petitioner was eventually retried and convicted. However, the history of this case shows that after the District Court denied the stay, then this case came up to the Ninth Circuit. The Ninth Circuit also denied a stay in this case, and the Ninth Circuit told Petitioner that they were denying the stay but without prejudice to him filing a motion for stay in the State Court. However, once this case went back to the State Court, there's no record of a motion for a stay being filed there. My argument to this Court would be that Petitioner's failure to submit that stay motion in the State Court shows that there was a lack of due diligence and that it was actually the failure to comport with that requirement that led to his eventual retrial and conviction. Therefore, equity actually would not be served in this case if this Court were to convert this case from a 2254 to a 2241. Because you think he was not diligent by pursuing a stay in the State Court after our Court denied the stay. That's your argument? That's correct. That's what I would emphasize to the Court. Now, moving on to the actual merits of this case, we would say that under either standard, there was implied consent given to the mistrial in this case, and therefore, double jeopardy did not bar Petitioner's eventual retrial and conviction. So, when do you think the silence occurred or the non-objection occurred that created the agreement or the consent? The Supreme Court cases, is it true that in the Supreme Court there is no case about consent by silence or non-objection? In all the Supreme Court consent cases, the defendant did something affirmative. That's correct, Your Honor. Okay. Regarding the question you asked Petitioner's counsel, the closest I can point this Court to is United States. Again, I'm having trouble hearing you. I will confess that I left my hearing at home, and therefore, I need you to talk into the mic. No problem, Your Honor. Is this a little better? Yes, that's better. Great. What I would point this Court to is the case of United States v. Jordan. That's a United States Supreme Court case from 1971. There, they found that there was no consent where there was no opportunity to object to a sua sponte mistrial. So, here, I mean, do you—your brief doesn't quite acknowledge, nor did the State Court opinion, that the District Court didn't do what he said he was going to do because he said he was going to—I mean, what he said he was going to do is rather unorthodox, which is essentially allow any juror to recuse himself just by raising his hand and saying something. And he said he was going to do that if there were no alternates left. But, in fact, at the time he did it, there were alternates left. And there was at least Juror 6 and perhaps Juror 4. So, he didn't do what he said he was going to do. So, when—first of all, do you agree with that? I don't know if I explicitly agree with that, Your Honor. So, my reading of the record is that the trial court believed at that point that they were down three people. That was jurors 3, 4— Right, and he also believed that there could be a two-day continuance. And what he asked the jury was, was this two-day continuance going give you any problems? So, he knew that Juror 6 would be there. Right. So, therefore, he was operating when he spoke to the jury on the premise that there was one alternate, if they were willing to—if there wasn't a problem with a two-day continuance. That's correct, Your Honor. And then that's the point where the heart attack guy raised his hand. Exactly. But he said we're down three. Yes. Which means he's including the—counting the person out in the hallway. We're down three. Yes. And if you don't want to wait for Juror Number 6— Then we would be down to none. Then we don't have any. And then this case would be done. And so, he questions the jury. That's correct. And he goes to the jury and tells them exactly what happened in this case. He says that Juror 3 was dismissed for bias. Juror 4 had a fiancé ankle problem. That Juror Number 32 had a child care problem. So, those are your three that are already down. And then he says, and we have a juror that needs a two-day delay. Right. So, what that means to me is that at no point before that was there anything that could have been said to be in agreement to proceed in this unorthodox fashion when there was still one possible alternate. All right. So, therefore, if there's a problem with non-objection, it's at that point, not earlier. I would respectfully disagree with that, Your Honor. I believe that the court, when they were stating their plan on the record before they went to go talk to the jury, they were saying that, look, we're down three people at this point. I'm going to go tell the jury if someone raises their hand and is unable to. No, but what he said he was going to tell the jury is if there are no alternates. He said, I'm going to do that if there are no alternates. He specifically said that. That's what keeps getting lost in both the Court of Appeals opinion on the red and your briefing. So, counsel, if the pinkeye person wasn't available, then there would be no alternates. If the pinkeye person and the heart attack person weren't available, then there would be only 11 jurors. Is that math right? I believe so, yes. But the pinkeye person, as Judge Berzon was saying, that he was inquiring of the jury whether the two days right before Thanksgiving was a problem, and then the heart attack person raised their hand. That's right. So going back to Judge Berzon's question, because I think it's a question that we all have looking at this record, which we just reviewed, the judge indicated how he was going to proceed. And if we accept that, that that's the plan that he announced, and then he deviated from it. The question is, was there an obligation at that point for defense counsel to object? Yes, Your Honor. Was there an opportunity to object? Yes. What was he going to do? This would have been an objection in front of the jury. Yes, it would have been, Your Honor. So there was an opportunity. The court spoke a while to the jury, telling them about what had happened in that case, about the three jurors that couldn't serve, and how a two-day delay was needed. And then the court goes on to say specifically, because we are so short of jurors, I'm not even going to start this if someone tells me you can't do it. At that point, it's made clear what the court's intention is. And then the court goes on to talk for quite a while, saying, I see your hand, I see your hand. Counsel, on this in front of the jury part, I'm looking at right after the heart attack person raises their hand, and the transcript that I'm looking at says the following proceedings were held at sidebar. The court, I believe they win. So presumably, if there were an objection made at that point, it would not have been in the presence of the jury, since the transcript reflects they're at sidebar. That's correct, Your Honor. So here, our argument would be that there were multiple opportunities to object. One would have been in front of the jury, when the court already made it explicit that because we are so short, then there was that opportunity. There was a sidebar opportunity, where the court says, I believe they win. And then there's a third opportunity, when the court goes back on to the bench, says, ladies and gentlemen, thank you for your service, speaks a little bit about their frustration about what had happened, and then says explicitly, at this point, I cannot go forward. There again— But did not say explicitly at that point that there was a mistrial, right? That happens 15 But the court says, at this point, I cannot go forward. So here, it would be clear that the court intended to declare a mistrial. Again, counsel could have objected. However, they didn't, and the court continued to talk and discuss— So what—and from the non-objection were to infer consent, equivalent to having made a motion, for example? I'm sorry, Your Honor, could you repeat your question? From the non-objection at that point, that is, after either interrupting the judge while he was talking to the jury, or right after he talked to the jury, when he said, I believe they win, there was an obligation from somewhere on the defendant to object or else to be taken to consent. Where does that obligation come from? That obligation comes from both state and federal law. I'm sorry? It comes from both state and federal law. Where? So from federal law, one of the cases is United States v. Smith, which was denied decided back in 1990. One of the things that the State Court of Appeal—I'm sorry, I see that I'm running out of time. No, you're fine. Go right ahead. Consider finding my answer. One of the things that the State Court of Appeal noted in their first decisions in Stanley 1 was that this court had decided United States v. Smith back in 1990, and that in that case, this court decided that a failure to object could be considered a factor in determining if implied consent existed. It's a tough case for you, though. Nothing's really quite lined up exactly. Smith involved two different lawyers, right? Co-co-counsel. Yes? And one of them was affirmatively seeking mistrial, and the other one stood by silently. Your Honor, if I may be so bold, that case is actually United States v. U. Oh, good. So tell me why Smith helps you. So United States v. U. U doesn't. Okay, go ahead. It—the two best cases for our side are United States v. U and United States v. Smith. I thought Smith was a manifest necessity case. Yes, it is. United States v. Smith held that defense counsel not only did not object to the order of mistrial, but affirmatively indicated his understanding that there could and would be a retrial, and that was enough to constitute implied consent. But that case—the facts—you're not arguing that your case is comparable to the facts in Smith? No, I would— You just can't. It went on and on in that case. You're right. I agree. I think, though, what's the helpful comparison to United States v. U and United States v. Smith is that it gives this Court a list of factors to consider when determining if implied consent exists in a case. And what factors do you think we should consider? I think that this Court should consider the factors that defense counsel participated in discussion regarding— I'm sorry, that what? That defense counsel participated in discussions regarding mistrial, which— Not comparable to the two cases you've just mentioned. I agree that the facts of this case were not— What discussions about a mistrial? The word mistrial was never—when the judge said what we—it seems to me the question really wasn't consenting to the mistrial. It was consenting to the process for determining whether there was going to be a mistrial, this odd process of the judge—anybody can raise their hand and that's it. I'm not going to ask any questions. That's exactly what he said. That's—if there was consent to anything, there was—it had to be to that. Is that right? You're right, Your Honor, that the defense attorney consented to that process because he never objected to it. Again, that was only discussed at the very end when the judge said this thing about if there are no alternates, I'm going to do this. And then he proceeded to do it even though there were alternates. And so again, to me the question is was there an obligation at that point when he did something different than what he said he was going to do and when he to—it appeared that he was heading—if anybody raised their hand, he was going to grant a mistrial. So at what point and why did the defendant have to object when he did something different than what he said he was going to do? Well, Your Honor, I would say that defense attorney had an obligation to object at that because if not, the court believed that it had the consent from the parties to be able to do this process and in order to move forward— But the court made a mistake. The court said he was going to do A and then he did Y. So what he believed is kind of not pertinent. The question is what a reasonable person would think happened. I understand, Your Honor. We've been a refugee a couple of times. We asked you what your strongest cases are and you said Smith and You. Yes. And we asked you what factors you thought we ought to consider and one of them was defense counsel participating in a conversation. What are the other factors you want us to consider, please? The other factors I would ask this court to consider is whether defense counsel stated anything that would lull a court into believing that consent was given and our briefing points to that quote about his only problem being about the expert witness— But that was obviously pertinent to the continuance. I mean, that's what they were talking about at the time. Are we going to keep Juror 6 by—Juror 4 by granting a two-day continuance? That was the discussion and that's what this was about. It wasn't about his only problem with granting a mistrial. There was no discussion of a mistrial at that point. The only thing I would point to in regards to that is that— And not only that, it would have been a ridiculous response to the mistrial. I mean, what he was saying is this is how we're going to continue, not how we're going to stop the trial. The only thing I would point to in that regards is that the court had already mentioned that the possibility of the case being done had been mentioned before that the only problem quote, so we would say that already the possibility of a mistrial or the case being over was being discussed before the quote happened. How is the statement that the—what I'm concerned about is how my expert is going to testify show that he was agreeing to a mistrial? It shows the opposite. It shows that he wasn't agreeing to a mistrial. He was assuming the case was going to go forward. I would say that he wasn't agreeing to declare a mistrial at that moment. He was agreeing to the court's plan to ask the jurors if they would be able to continue to serve and if it came down to a point where there were only 12 jurors remaining, then a mistrial would be declared. And then after that, there's multiple opportunities to object once it becomes clear that the court has decided a mistrial will be declared and then they do not. Counsel, you're way over time, so I'm going to ask you to wrap up. I will wrap up. I will just wrap up by saying these things. The other factors we believe that this court should consider are whether defense counsel objected to the mistrial, which we've discussed at length, and finally, whether counsel indicated his understanding that there could and would be a retrial, similarly to the Smith case. Here, defense counsel, after the mistrial was formally declared, did not object but instead recognized that a retrial would occur. We would say that this also falls in line with a finding of implied consent in this case. And for all of these reasons, we would ask that this court affirm the district court's decision. Thank you. Thank you. Thank you, Your Honor. Three quick points. One on the equity issue. I think the state has waived the due diligence argument and also I think they should be judicially stopped because the DA opposed Stanley's request for a stay in district court in this court and in the trial court. Is opposing counsel right that the request wasn't renewed in state court? I'm not sure. I don't believe we have that in the record. And then on the merits, just two things. There's no duty to object. We know there's no duty to object to a mistrial, but also it wouldn't make sense to impose a duty to object to some sort of, you know, conditioned precedent based on an error or to correct the judge's error because that would swallow the rule. You know, if every, I mean, every declaration of mistrial without necessity and without consent is based on error. So you can't have, you know, counsel be expected to interrupt the judge and correct error because that would swallow the rule. Well, I don't know if that's right. It seems to me there's one category of cases where we've talked about and we've said this, we certainly said it, that Bates talks about this, for example, where we've said, you know, where there's error by the court or by the prosecutor, what we're concerned about first and foremost is that the defendant gets to decide whether or not he or she is going to go forward with that jury or start over again, right? But those cases, those manifest necessity cases are cases where there's been an error and typically an abrupt outburst of some kind. Somebody said something that was a mistake and was very prejudicial and then we're looking at whether or not reversal would have been certain to occur, in which case the trial court has a whole lot more discretion to declare a mistrial rather than checking in, as you know, or a case where that's not so clear, in which case Bates talks about four factors that need to be considered. But that's not what happened here, right? This trial really, except that the jury had been sworn, again, on a Friday afternoon, unfortunately, nothing else had happened. Right. So why are we looking at those cases? It seems to me that, you know, the premise, what we're worried about in those cases really apply very well here. No, I don't think we need to look at those cases to decide this case. Okay. So we're looking at this case. We're looking at just implied consent and we're looking under the federal standard, which is a pretty holistic, fuzzy standard. And you think that we should decide there was not implied consent here because? Because none of this, I mean, I don't know how to say it other than to be conclusory. There was no, because under state law he had no duty to object, the fact that he didn't object to errors precedent, the judge's errors precedent to it that would have led the judge to. If you're going to start with, if you're going to say, if your premise, forgive me, Judge Burson, if your premise is under state law he had no duty to object, I think you've got a problem right there because of Stanley 1. What am I missing? Stanley 1 says that mere silence, that this case was more than mere silence under state law. If we're talking about 2254D, then that was based on an unreasonable determination of the facts for reasons in the briefs. Okay. That's. I cut off Judge Burson, I didn't mean to. So what is your succinctly argument about why this was an unreasonable finding of fact? Which fact, Your Honor? Implied consent. Which fact are we? Which fact are you arguing was unreasonably decided? All of them. There was, there's literally not a single fact that was, that is material here that the court reasonably decided. But again, I would just go to the, to the sort of the oarspring of the state court's decision and say that it's all of these, all of these findings about an affirmative obligation stem from this idea that he had done more than just remain silent. He had participated in a discussion that fully reasonably led the judge to reasonably believe that there was consent. But none of those factual determinations hold up. And since everything else flows from that, including the finding that there was an obligation in these circumstances, those findings can't be reasonable. Well, what we're looking at is the 2013 opinion, the one on the writ, right? The Judge Klosky opinion. And that one, I mean, he, what he tried to do to sort of deal with this conflict or gap is to say that there was a, he recognized that the district court had originally said that he was going to do this if there was, were no alternates. And he seemed to say, but that, that, that was an agreement and that was amended by the concern about this, a juror who couldn't come for two days. And therefore, there was somehow between the two of them an agreement that he could do  That, that's what I understand the Judge Klosky opinion to have done. And the question is, is that a reasonable finding? No, it's, it's not. I mean, I don't know how to say it more succinctly than I did in the brief. I mean, there's just, it has nothing to do. Again, Pence's statement was responding to the problem of jurisdicts. And he was saying, my only problem with scheduling around jurisdicts is my expert. And that assumes the case is going forward, not that it's not going forward. Right. And it assumes it correctly based on Judge Bauer's own representations, because Judge Bauer's three times says, hey, we need to deal with this jurisdicts issue because, right. Okay. What do you want to do about jurisdicts? Again, what do you want to do about jurisdicts? And Pence was, and they used to say, by the way, you know, if we're down to no alternates, you know, I'm, I'm going to pull the plug. I'm going to, you know, go to the juror and pull the juror. So what he's essentially saying is if you don't agree to this, then I'm going to pull the plug. Yeah. I think that's what it's, that's what he seems to be saying. But not if you do agree to it. I'm sorry? But not if you do agree to it when they did agree to it. Right. I don't think, I just don't think he's, I don't think Pence is addressing the proposed procedure. He said we're down three, right? And then he had this one more that was wobbly. And he said, I don't think we've got a decision on that. The prosecutor said, I don't think we have any left. And you think that defense counsel still doesn't have an obligation to speak up? About the, about how many streets? There's several different opportunities there. If there was a miscommunication and defense counsel was concerned about that. I've just, I'm just. I don't, well, I don't think he was concerned about it because Judge Bauer's didn't think they were only down after, after Street said, well, I think we're down to none. Judge Bauer said, well, we're down three. Okay. So, so, so this comes back to, I think you're wanting me to say that Judge Bauer's made very unambiguous statements about what he was going to do and then, and then deviated. And still no obligation to object. Yeah, I think that's right. I think that's right. And I'll just say that even if you think that there was an obligation to step in and intercede when it was clear that Judge Bauer's was departing from the contract, from the agreement, such as it was, there was no meaningful opportunity, even, even assuming that the, when Judge Bauer said, you know, I think they win, even assuming that that was a meaningful opportunity to object at that point, which I don't concede, the well had already been poisoned by then. Judge Bauer's had already embarked on this tirade to the jury, had already told them, hey, I'm going to let you all go if you don't want to serve. I don't see any reasonable way to put that genie back in the bottle. And I guess I would just end with that and ask the court to reverse and remand with, you know, instructions to grant the writ. We understand. Thank you both for your very helpful arguments. We appreciate it. It's a really important case and we'll take it in our advisement. Thank you, Your Honor. We'll be off record. All rise.
judges: BERZON, CHRISTEN, BENNETT